**UNITED STATES of America,
Appellant,**

v.

**Elmer Joseph HOWE, Stuart Milton Hazard, William Lloyd Bruce, Steven Ray Courtright, Thomas Lynn Fischer, William Wayne Hockman, Appellees.**

No. 78–1334.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1978.

Decided Jan. 24, 1979.

Rehearing and Rehearing En Banc
Denied Feb. 15, 1979.

Order Filed March 23, 1979.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellant; Ronald S. Reed, Jr., U. S. Atty., and Anthony P. Nugent, Jr., First Asst. U. S. Atty., Kansas City, Mo., on brief.

Robert G. Duncan of Duncan & Russell, Gladstone, Mo., for appellees; Robert G. Duncan, Gladstone, Mo., on brief, for appellee Elmer Joseph Howe.

Charles A. Gallipeau, Kansas City, Mo., on brief for appellee Stuart Milton Hazard.

David C. McConnell, Kansas City, Mo., on brief for appellee William Lloyd Bruce.

Sanford P. Krigel, Kansas City, Mo., on brief for appellee Steven Ray Courtright.

Gregory M. Perlstein, Kansas City, Mo., on brief for appellee Thomas Lynn Fischer.

Benjamin D. Entine, Kansas City, Mo., on brief for appellee William Wayne Hockman.

Before LAY and McMILLIAN, Circuit Judges, and LARSON,* Senior District Judge.

LAY, Circuit Judge.

The defendants were indicted on 40 counts charging violation of the wire fraud statute, 18 U.S.C. § 1343, and one count charging violation of the Jenkins Act, 15 U.S.C. §§ 375–378. The Jenkins Act is a federal disclosure act designed to assist the states in collecting state-imposed sales and use taxes on cigarettes. The Act requires persons who ship cigarettes in interstate commerce to states imposing a tax on cigarettes to disclose to the tobacco tax administrator of the state the name of the shipper as well as the name and address of the person to whom the shipment was made, the brand and the quantity of the shipment.[1]

---

* Earl R. Larson, Senior District Judge for the District of Minnesota, sitting by designation.

1. 15 U.S.C. § 376 reads:

(a) Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes, to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such a sale or transfer and shipment, shall—

(1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business; and

(2) not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

On May 5, 1975, federal agents, in conjunction with Missouri State Department of Revenue agents, seized from defendants, pursuant to a search warrant, unstamped cigarettes, money, checks, records and various other items from defendants' vehicles, a warehouse, a house and from the person of defendant Howe. Following the aforementioned indictment defendants moved the district court to suppress the evidence seized. The district court, the Honorable Russell Clark presiding, found that the facts alleged in the affidavit supporting the search warrant did not establish probable cause to believe a federal offense had been committed. Accordingly, the district court granted defendants' motion to suppress. This appeal followed. We respectfully disagree and reverse and remand for further proceedings.

The basis for the search warrant was the lengthy affidavit of Special Agent Toole. As summarized by the Government. the affidavit alleged:

1. Defendants were distributing unstamped cigarettes in the Kansas City area; none had ever been licensed as wholesale cigarette distributors by the Missouri Department of Revenue; none had ever filed with the state any statements of the kind required by 15 U.S.C. § 376(a); none had ever paid any taxes due on cigarette sales and none had ever been named by another person in statements filed pursuant to 15 U.S.C. § 376(a).

2. A reliable informant advised that unstamped cigarettes were being sold at Tom and Nell's Bar, the Walnut Inn and the Mountaineer Club; the informant further indicated that these bars obtained cigarettes from "*individuals* who obtain large quantities of cigarettes in North Carolina and then ship the cigarettes by interstate carrier to Kansas City, Missouri." (Emphasis added). The informant stated that the cigarettes were brought to a building on St. John Street in Kansas City, Missouri, from which they were distributed throughout the

week in Kansas and Missouri. One of the defendants, Hazard, was observed on April 14, 1975, transferring cigarettes from the trunk of one auto to another in the parking lot behind the Walnut Inn and Tom and Nell's Bar.

3. Surveillance had revealed that on the three successive Mondays before May 3, 1975, approximately 150 cases of unstamped cigarettes from outside the State of Missouri had been received at Chief Freight Lines, Inc., in Kansas City and hauled by Howe and Courtright to 5617 St. John, Kansas City, Missouri. Howe returned to Chief Freight Lines and loaded 25 to 50 more double cases. Hockman, Hazard and Anderson assisted in the unloading. Surveillance by government agents also disclosed that Howe, Hockman, Hazard and Anderson drove various motor vehicles which were loaded at 5617 St. John Street with boxes and shopping bags of cigarettes. Open boxes and shopping bags of cigarettes were observed being delivered to 5520 Hunter Terrace, Raytown, Missouri, and to various other bars, cars and places in Missouri.

4. On September 10, 1974, local police arrested Hockman in possession of 260 cartons of untaxed cigarettes. On April 11, and April 25, 1975, Detective Reynolds made purchases of two cartons of untaxed cigarettes from Hockman.

5. In Kansas City, Jackson County, Missouri, the rate of cigarette tax was eighteen cents per package or $108.00 per double case of 60 cartons (600 packages).

The district court suppressed the evidence on the ground that the affidavit failed to disclose probable cause that a federal crime had been committed. On appeal the appellees state the district court's order should be affirmed for the additional reason that the informant's reliability was not established since the affidavit did not reveal the underlying circumstance as to the source of the informant's information. *Cf. Aguilar v.*

(b) The fact that any person ships or delivers for shipment any cigarettes shall, if such shipment is into a State in which such person has filed a statement with the tobacco tax administrator under subsection (a)(1) of this section, be

presumptive evidence (1) that such cigarettes were sold, or transferred for profit, by such person, and (2) that such sale or transfer was to other than a distributor licensed by or located in such State.

*Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) *and Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ An affidavit for a search warrant may be adequate if it is either sufficiently detailed or sufficiently corroborated as to supply as much trustworthiness as does the two-pronged *Aguilar* test. *United States v. Marihart,* 472 F.2d 809, 812–15 (8th Cir. 1972), *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). In the present case the informant revealed "personal knowledge" of certain facts and events. As the summary of the affidavit shows, the informant's statements were corroborated by surveillance of investigating agents. Under the circumstances we find sufficient corroboration to establish the reliability of the informant's information.

The more difficult problem relates to the ground upon which the district court suppressed the evidence, to-wit, that there existed no showing of probable cause that a federal offense had been committed. The district court reasoned as follows:

> While the affidavit presented to the magistrate may have demonstrated probable cause to believe that the Missouri cigarette laws, Mo.Rev.Stat. Chapter 149, were being violated, the Court concluded that there were no facts from which the magistrate could have concluded that the Jenkins Act was being violated by these defendants. Pages 3 through 8 of the master affidavit presented to the magistrate contained information concerning the defendant's (sic) activities in moving cigarette cartons from the Chief Freight Lines in Kansas City, Missouri to other points in Kansas City, Missouri. At no point in the master affidavit are there any facts suggesting that the named individuals had shipped or transported the cigarettes in interstate commerce. Further, the federal agents were not seeking the search warrant for untaxed cigarettes on a theory that the cigarettes were evidence that the interstate shipper was in violation of 15 U.S.C. § 375 et seq. Nor are there any facts set forth in the affidavit from which it could be concluded that there was probable cause to believe that the interstate shipper was violating this Act.

■ We must respectfully disagree. In the present case the affidavit reveals that unstamped cigarettes had been shipped or transported to Kansas City, Missouri, that unstamped cigarettes were being sold by certain bars, and that the unstamped cigarettes were obtained from individuals who shipped the cigarettes in interstate commerce to Kansas City. Surveillance established that defendants were distributing unstamped cigarettes. The affidavit further alleged that defendants were not licensed wholesale distributors exempt under the Act, that none of the defendants had made any disclosures required by the Jenkins Act concerning the unstamped cigarettes, that no defendant had paid cigarette or sales taxes on these or any other cigarette sales and that no one had ever disclosed the defendants' names as receivers of the cigarettes. Under the circumstances we find there is probable cause shown that the defendants were either shippers of the cigarettes themselves or caused the cigarettes to be shipped to themselves and that the necessary filings required by the Jenkins Act had not been made.

The defendants urge, however, that because 15 U.S.C. § 376 exempts disclosure when cigarettes are shipped to a licensed retail distributor and because the affidavit is silent as to whether the defendants possessed retail licenses, there are no facts indicating the requirements of the Jenkins Act even come into play. We disagree.

■ For federal agents to establish probable cause to search it is necessary only to demonstrate with some degree of reasonableness that federal criminal activity is "probable," not that it exists beyond a reasonable doubt. *United States v. Fleming,* 566 F.2d 623, 625 (8th Cir. 1977); *United States v. Kershman,* 555 F.2d 198, 201 (8th Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977); *United States v. Jones,* 545 F.2d 1112, 1114 (8th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). Furthermore, as the

Government urges, all the affidavit need reveal is that a federal crime has been committed by some individual. It is not necessary to allege that the owner or possessor of the place to be searched is the perpetrator of the crime. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); *United States v. Manufacturer's National Bank*, 536 F.2d 699, 703 (6th Cir. 1976), *cert. denied sub nom. Wingate v. United States*, 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 749 (1977).

■ If indeed defendants were licensed retail distributors such might constitute a legal defense for the failure to file disclosures under § 376. Nonetheless the affidavit alleges sufficient facts at relevant points of time to demonstrate defendants were not acting as licensed retail distributors. The clandestine movements by the defendants of the untaxed cigarettes from the freight yards to vehicles and their subsequent distribution of untaxed cigarettes provide a contrary inference. So too does the averment in the affidavit that defendants had not paid any of the taxes required to be paid by cigarette distributors.

■ Defendants also argue that the timing of the execution of the search warrant precludes a finding of probable cause. Defendants' argument is based on 15 U.S.C. § 376(a)(2), which requires that the shipper file with the state tobacco tax administrator not later than the 10th day of each calendar month a memorandum or a copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month. Since the search warrant was executed on May 5, five days before the 10th of the month, defendants argue that the affidavit fails to show that the defendants or any other shipper in fact violated the Act for the month of April since five days remained for such compliance. We are not so persuaded.

■ The affidavit alleged, in addition to a violation of the Jenkins Act, a conspiracy to violate the Jenkins Act. We find the affidavit alleged sufficient facts to show a working arrangement with a shipper to establish probable cause of a conspiracy to

violate the Act. If defendants were not the shippers, then clearly they obtained the cooperation of a third party to ship the cigarettes to Missouri. That being the case, a fair inference exists that they also obtained an agreement not to file the § 376(a)(2) memoranda, which would have exposed their cigarette importations and nonpayment of Missouri cigarette taxes. *Cf. United States v. Melvin*, 544 F.2d 767 (5th Cir.), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977). Upon the basis of the reasonable inferences to be drawn from the affidavit, a reasonable man could have concluded that Howe and his associates had conspired with the out-of-state shipper in violation of 18 U.S.C. § 371. If in fact there was subsequent compliance with the Act, the alleged guilty shipper may set up his compliance as a defense to the alleged criminal activity. However, under the law of conspiracy, completion of the substantive crime is not necessary to show guilt. In *United States v. Thompson*, 493 F.2d 305 (9th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974), the court stated:

> [T]he crime of conspiracy is complete upon the agreement to violate the law, as implemented by one or more overt acts (however innocent such may be), and is not at all dependent upon the ultimate success or failure of the planned scheme.

493 F.2d at 310.

The same may be true for the probable cause determination. Here there were sufficient facts and circumstances which would warrant an inference that the defendants had conspired to ship the untaxed cigarettes into Missouri themselves or had agreed with an unknown source to do so, thus exposing one or more to a charge under § 376 for failing to disclose the name of the shipper or shippers to the state tax administration.

Under the circumstances we find the Government had shown probable cause that someone was violating § 376 and that the subject matter seized could be considered evidence of that crime.

The district court's order is reversed and remanded.

## ORDER

A Suggestion of Death of Elmer Joseph Howe has now been filed subsequent to appellee's obtaining a stay of mandate in this Court pending the filing of a petition for certiorari; this Court now orders the judgment of this Court rendered against Elmer Joseph Howe vacated and the case is remanded to the district court with directions to dismiss the indictment as to Elmer Joseph Howe. *See Durham v. United States,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed. 2d 200 (1971).