STATE of Missouri,
Plaintiff-Respondent,

v.

Gary ROHRER, Defendant-Appellant.

No. 11066.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 22, 1979.

Motion for Rehearing and for Transfer
Denied Nov. 9, 1979.

Application to Transfer Denied
Dec. 6, 1979.

James Ashcroft, Atty. Gen., Michael P. Donegan, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Paul M. Storment, Jr., Storment, Stegmeyer & Paridon, Belleville, Ill., for defendant-appellant.

MAUS, Judge.

The defendant was charged in two counts with (I) possession of marijuana and (II)

growing and cultivating marijuana. A jury found him guilty upon Count I and not guilty upon Count II. On appeal, defendant's sole allegation of error is that the trial court erred in not quashing a search warrant and in not suppressing evidence seized as a result of that warrant. In turn, this allegation is founded upon the assertion that the affidavits upon which the warrant was issued do not within the constitutional meaning establish "probable cause". U.S. Const. Amend. IV; Mo.Const. Art. I § 15.

In the consideration of the problems of search and seizure, by necessity, the controlling opinions express much judicial philosophy (an analysis of the grounds and concepts expressing fundamental beliefs)[1] in balancing the rights of the individual against the interests of society. In determining the validity of the issuance of a search warrant this analysis centers upon the constitutional prerequisite of "probable cause". Such expressions have seemingly created a thicket of judicial variances difficult to penetrate to visualize the boundary lines established. Such expressions have been described as "complex analyses and obfuscatory language". *Spinelli v. United States*, 393 U.S. 410, 435, 89 S.Ct. 584, 598, 21 L.Ed.2d 637, 654 (1969). Nevertheless, it is the duty of law enforcement officers and courts issuing search warrants to proceed within these boundaries. It is the duty of the trial court and this court to determine that they have done so. While it is undertaken with fear and trepidation of adding to the obfuscation, a review of the cases seems necessary to the disposition of this appeal.

In substance the affidavit upon which the warrant was issued on April 8, 1977, to search the residence of Gary Rohrer was based stated: That the affiant was a deputy sheriff and major crime investigator; that on April 7, 1977, an informant stated she had recently seen a large quantity of marijuana in the attic of the defendant's residence; that the marijuana was currently in the attic; that the informant gave detailed directions on the route to the rural residence; that this informant also gave information and directions to a field of marijuana the defendant was growing; and that using these directions officers easily located the residence and the field of marijuana. The affiant further stated that it was common knowledge the defendant had for the past few years been involved in the cultivation and sale of controlled substances; that the defendant had been seen on numerous occasions associating with known drug dealers and users; and that the defendant had a reputation of being a drug dealer.

In testing and interpreting the affidavit to show probable cause we are admonished to consider the following guideline:

"[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965).

Other principles to be observed include the following: "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli v. United States*, supra, 393 U.S. at 419, 89 S.Ct. at 590, 21 L.Ed.2d at 645. Probable cause may be established by information provided by an informant and it is not necessary that the informant be named in

1. Webster's New Collegiate Dictionary.

the affidavit.[2] *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). However, it is when a warrant is based upon such information that the analysis to be employed in determining probable cause is most complex.

In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), a paid informer who had previously supplied accurate information gave an officer very detailed information concerning the defendant and his anticipated transportation of heroin. In finding the officer had probable cause to arrest the defendant the court said: "And surely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true". *Draper v. United States*, supra, 358 U.S. at 313, 79 S.Ct. at 333, 3 L.Ed.2d at 332.

In *Aguilar v. Texas*, supra, a search warrant was issued on the basis of an affidavit that the affiant received information from a credible person and believed the defendant possessed narcotics. The court noted the affidavit did not state that the informant spoke with personal knowledge, and the magistrate accepted "the informant's 'suspicion,' 'belief' or 'mere conclusion' ". The court then announced a standard which is referred to as the "two prong" test: "[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' " *Aguilar v. Texas*, supra, 378 U.S. at 114–115, 84 S.Ct. at 1514, 12 L.Ed.2d at 729.[3]

In *Spinelli v. United States*, supra, a search warrant was issued on the basis of an affidavit reciting the results of a surveillance of the defendant's activities on five days. This included trips on four days to an apartment house, on one of which when he was followed further he entered an apartment in which there were two phones. It further stated the defendant was known as a bookmaker and gambler and as an associate of bookmakers and gamblers. It concluded that a reliable informant said the defendant was conducting a bookmaking operation by those two telephones. In enunciating the standards by which the sufficiency of the affidavit was to be measured the court said:

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?" *Spinelli v. United States*, supra, 393 U.S. at 415, 21 L.Ed.2d at 643, 89 S.Ct. at 588.

The court then found the affidavit did not pass either prong of the *Aguilar* test: the affiant offered no reason in support of his conclusion the informant was reliable; and the tip did not contain a sufficient statement of the underlying circumstances from which the informant concluded the defendant was conducting a bookmaking operation. In this connection the court emphasized the fact the informant did not profess any personal knowledge.

---

2. Concerning subsequent disclosure see V.A.M.R. Crim.Rule 25.39; *State v. Edwards*, 317 S.W.2d 441, 446 (Mo. banc 1958); *State v. Wandix*, 590 S.W.2d 82 (Mo. banc 1979) and U.S. Supreme Court Standard 510, Weinstein's Evidence, § 510.

3. The alternative the informant was "credible *or* his information reliable" has received but little notice.

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States*, supra, 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644. The detail in the report in *Draper* was cited as a basis from which a magistrate "could reasonably infer that the informant had gained his information in a reliable way". *Spinelli v. United States*, supra, 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644. The observed activities of the defendant were found not to be of themselves indicative of criminal activity and not sufficient to support probable cause. The court declared the assertion the defendant was a known gambler could not be used to give additional weight to an otherwise insufficient affidavit. The affidavit was condemned because it "falls short of the standards set forth in *Aguilar, Draper* and our other decisions that give content to the notion of probable cause." *Spinelli v. United States*, supra, 393 U.S. at 419, 89 S.Ct. at 590, 21 L.Ed.2d at 645.[4]

*United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), involved, as does this case, the report of an informant expressly relating personal observation. In part I of the opinion (in which four justices concurred) the court cited with approval *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) also involving recent personal observations. Such recent personal observation established that the informant's information had been gained in a reliable way, distinguishing the case from *Spinelli*. The fact the affidavit declared the informant to be "prudent" rather than "credible" was not decisive and noted that a bare statement that the affiant believed the informant to be truthful would not in itself supply a factual basis for credibility. However, the affidavit, which was detailed in nature, when coupled with the affiant's knowledge of the defendant's background, contained an ample factual basis for believing the informant. In part II of the opinion (in which three justices concurred), the court emphasized the "substantial basis" test applied in *Jones*, which included personal observation, previously accurate information supplied by the informant, corroboration by other . unnamed sources and the defendant's reputation. Previous reliability was declared not to be essential. The *Spinelli* prohibition against consideration of the defendant's reputation was disapproved. In part III of the opinion (in which four justices concurred) the court emphasized that under the circumstances, the informant's admission of his own guilt in long time participation in criminal activity of buying illegal whiskey lent credence to the information supplied. Mr. Justice White agreed with Part III and concluded that as a whole the affidavit was sufficient. Four Justices dissented. The thrust of the dissent is that the credibility of the informant was not established. The dissent ascribes no weight to the affiant's assertion the informant was a credible person. The establishment of credibility by reason of personal observation was not approved. It was suggested that credibility might be supplied if the informant was "somehow responsible to the affiant", or by "a more than ordinarily detailed description of the suspect's criminal activities", *United States v. Harris*, supra, 403 U.S. at 593, 91 S.Ct. at 2086–2087, 29 L.Ed.2d at 739, or by a description of "general background, employment, personal attributes that enable him to observe and relate accurately, position in

4. The other cases cited are *United States v. Ventresca*, 380 U.S. 102, 13 L.Ed.2d 684, 85 S.Ct. 741 (1965) and *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). These cases have received but little express attention as setting forth standards of probable cause, although both involved informant's tips corroborated by officers observations of incriminating circumstances or suspicious activities. *United States v. Ventresca*, supra, was cited with approval in *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

the community, reputation with others, personal connection with the suspect, any circumstances which suggest the probable absence of any motivation to falsify, the apparent motivation for supplying the information, the presence or absence of a criminal record or association with known criminals, and the like". *United States v. Harris,* supra, 403 U.S. at 600, 91 S.Ct. at 2090, 29 L.Ed.2d at 743. The dissent declined to find the requisite assurance of credibility, especially in the absence of a showing of lack of immunity from prosecution, in the admission of participation in criminal activities. Probable cause was not established by a prior confiscation of illegal whiskey, or in general reports concerning the defendant's criminal activities. The dissent did not deal with establishing credibility by corroboration other than to observe that the informant's information had not been corroborated and to note "it will always be open to the officer to seek corroboration of the tip." *United States v. Harris,* supra, 403 U.S. at 600, 91 S.Ct. at 2090, 29 L.Ed.2d at 743.

*Aguilar* condemned a warrant based upon an affidavit alleging only reliable information and set forth a two-prong standard. *Spinelli,* in dealing with information not shown to be based upon personal observation, finds it insufficiently detailed and insufficiently corroborated by seemingly innocent activities to be trustworthy. However, it would seem the decisions do not establish a single rigid formula for determining probable cause. Apparently whether or not probable cause is established may depend on a variety of factors including: the extent of detailed information provided, whether or not the information is based upon personal observation, or whether or not it is corroborated, and the nature and extent of that corroboration. *Spinelli,* said to be the most restrictive decision, recognizes the viability of *Draper, Ventresca,* and *McCray,* supra, n. 3. It recognizes that a tip "when certain parts of it have been corroborated by independent sources" can be "as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration". *Spinelli v. United States,* supra, 393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 642.

The impact of these decisions has been summarized: "*Spinelli* thus stands squarely for the proposition that even if the two-pronged test of *Aguilar* is not met, the information before the magistrate may be sufficient if, as in *Draper,* it is sufficiently detailed, or sufficiently corroborated, to supply as much trustworthiness as does the *Aguilar* test." *United States v. Marihart,* 472 F.2d 809, 813 (8th Cir. 1972).

"In *Harris,* there was no averment of underlying circumstances to support the informer's credibility and thus the first of *Aguilar's* two prongs was not satisfied. Furthermore, unlike *Draper,* none of the tip was corroborated by independent investigation. The corroboration consisted solely of the suspect's past record and reputation and other unspecified tips from undisclosed informants. The Court nevertheless affirmed the validity of the warrant, primarily because, according to the Chief Justice's plurality opinion, the underlying circumstances by which the informer acquired his information were said by the informer to be firsthand observation and activity, and because the credibility of this claim of firsthand knowledge was bolstered both by the fact it constituted an admission against penal interest and because the substance of the claim was corroborated to the extent mentioned above. . . . It does seem to us, however, that in view of the concurring opinions of Mr. Justice White in *Spinelli* and Mr. Justice Blackman in *Harris,* in view of the marked difference in tone between *Harris* and *Spinelli,* and in view of the split voting pattern in those two cases, the lower federal courts would be well served if the Supreme Court would clarify its views as to warrants and searches premised upon informers' tips." *United States v. Marihart,* supra, 472 F.2d at 813–814.

In speaking of establishing the credibility of an informant to satisfy that prong of the *Aguilar* test it has been observed:

"However, reliability of an informant may be demonstrated to the magistrate in many collateral ways. . . . In

some instances where it is alleged that the informant was known to the affiant or had passed on previous information, this has been held to be a sufficient test of the reliability of the informant. *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). However, where the affiant officer does not know the informant it would be impossible for the affiant to vouch as to the informer's reliability.

Under such circumstances reliability of an informant *may best be established by the affiant relating some corroboration* of the story which the informant tells. Furthermore, the underlying circumstance even without corroboration may have built-in credibility guides to the informant's reliability. The essence of reliability may be found in an informant's statement of facts rather than an allegation of mere conclusory suspicion. An informant who alleges he is an 'eyewitness' to an actual crime perpetrated demonstrates sufficient 'reliability' of the person." *McCreary v. Sigler*, 406 F.2d 1264, 1268 (8th Cir. 1969). (Emphasis added).

The defendant relies upon *Spinelli v. United States*, supra, and *State v. Phillips*, 532 S.W.2d 533 (Mo.App.1976). He emphasizes that the affidavit does not set forth the informant had previously proved reliable or a statement the informant was reliable. While such allegations may aid in establishing the validity of a search warrant, they are not absolutely essential. *McCreary v. Sigler*, supra; *State v. Phillips*, supra. The basic reason the search warrants were found invalid in *Spinelli v. United States*, supra, and *State v. Phillips*, supra, is that the affidavits did not set forth the underlying circumstances from which the informant concluded the one defendant

was bookmaking or the other defendant possessed narcotics.[5] That element is, as observed in those cases, supplied by personal observation, which clearly distinguishes those cases. Defendant fails to note the important distinction between an informant who divulges evidence of a crime obtained from sources unknown to the magistrate and the informant in this case who related matters gathered from his own observation. *Cundiff v. United States*, 501 F.2d 188 (8th Cir. 1974). Here, the informant gave detailed information based on personal observation. Such a statement may in itself sufficiently establish reliability of the informant. *Cundiff v. United States*, supra; *United States v. Harrelson*, 442 F.2d 290 (8th Cir. 1971); *United States v. Wahlquist*, 438 F.2d 219 (8th Cir. 1971). Also *State v. Bradley*, 485 S.W.2d 408 (Mo.1972). In addition, in this case by the use of that information the residence and field of marijuana were easily located. The reliability of the informant was best "established by the affiant relating some corroboration" of the informant's information. *McCreary v. Sigler*, supra, 406 F.2d at 1269. Also see *United States v. Howe*, 591 F.2d 454 (8th Cir. 1979); *United States v. Garrett*, 565 F.2d 1065 (9th Cir. 1977). Under the authorities cited the warrant was issued on probable cause. Having so decided, the state's contention the defendant did not preserve his claim of error by proper objection need not be considered.

The judgment is affirmed.

All concur.

---

**5.** In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, (1959) and *United States v. Marihart*, 472 F.2d 809 (8th Cir. 1972), a detailed statement demonstrated that an informant gained his information in a reliable way.