**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Freddie CUMMINGS,**
**Defendant–Appellant.**

No. 15144.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 8, 1989.

Scott B. Tinsley, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Freddie Cummings guilty of receiving stolen property, more specifically, retaining stolen property, in violation of § 570.080, RSMo 1978. Defendant was found to be a persistent offender and his punishment was assessed at imprisonment for a term of seven (7) years. The defendant appeals. We affirm.

The sufficiency of the evidence to support the judgment of conviction is not at issue, although the sufficiency question was carefully preserved upon trial. Inasmuch as this appeal is the defendant's appeal of constitutional right, *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), we shall consider the sufficiency of the evidence sua sponte. The State presented evidence from which a jury could have found beyond a reasonable doubt that on the first or second day of April 1984, automotive repair machines and tools were stolen from a business known as the Motor Transportation Company. Some of the property taken belonged to Raymond Bryant, manager of the Motor Transportation Company; some of it was the property of the business. Bryant testified as a witness for the State. He identified: 1) a tool cabinet and its contents, received as State's exhibit 1; 2) an "analyzer," described as an instrument for "charging systems and testing batteries" which was received as State's exhibit 2; 3) a "vacuum" used for cleaning air conditioning systems, received as State's exhibit 3; 4) battery crimping tools, received as State's exhibit 4; 5) a welder, received as State's exhibit 5. Mr. Bryant testified the value of the tool cabinet and the tools it contained was "over

five thousand dollars." The "analyzer" was valued at $889; the vacuum pump was valued at $201; the battery crimper was worth $217; the welder was valued at $167. The total value of the items identified by Mr. Bryant was therefore about $6,500.00.

The State further had evidence that Ivan Johnson, a deputy sheriff of Greene County, found the property we have described in a shop or garage occupied by the defendant. Deputy Johnson recovered the property in the execution of a search warrant which we shall presently discuss. Johnson also testified that he had recovered stolen property from the defendant's premises in January 1984. In January 1984, this officer had recovered the motor and transmission of a 1982 Peterbilt truck which was stolen in Oklahoma, a 1984 Peterbilt truck which had been stolen in Texas, and a grain trailer which had been stolen in Missouri. Such is the substance of the State's case.

 The elements of the offense charged in this case, generally stated, are: 1) retaining the property of another; 2) for the purpose of depriving the owner of a lawful interest therein, 3) knowing the property has been stolen. *The New Missouri Criminal Code: A Manual for Court Related Personnel,* § 15.6, p. 15–9 (1978). The State had evidence that on April 1 or 2, 1984, property was stolen from Motor Transportation Company in Jasper County; on the 4th of April the stolen property was found in a metal building at the rear of defendant's residence in Greene County. There was direct evidence from Deputy Johnson that the defendant had received other stolen property in another transaction within the year preceding the transaction charged. The evidence and the inferences reasonably to be drawn therefrom were sufficient to support the judgment of conviction.

Two points have been briefed in this court. The first point as stated, is:

"The trial court erred in overruling appellant's request for a mistrial and in failing to take any corrective action, where appellant made said request when the prosecutor stated during closing argument, '*Ladies and gentlemen, ask*

*yourselves, how can the defendant explain the theft of the tools on ...',* because said comment was a direct reference to appellant's failure to testify, or an indirect reference drawing the jury's attention to same, thereby denying appellant the right to a fair trial." (Emphasis added)

The error alleged arose in the following context. The defendant called one Lloyd Allen Mackin as a witness. Mackin testified that a tool box and various tools introduced in evidence by the State were stolen items which he had had in his possession. Mackin further testified the defendant gave him permission to store the tools in a shed located on the defendant's property. Additionally, Mackin testified that although he stored the stolen property at the defendant's residence, he did not tell the defendant the property was stolen. Mackin also stated the defendant was not present on the date he delivered the tools. On cross-examination, Mackin admitted he had five felony convictions and considered himself a friend of the defendant. At the time of trial, Mackin was in custody of the Department of Corrections.

During closing arguments the prosecutor, commenting on the defendant's evidence, made the following statements:

"Let's look at the defendant's case. What was the defendant's evidence? Well, it's the testimony of a five-time felon. It's the testimony of a man currently residing in prison. It's the testimony of a self-admitted friend of the defendant. It's the testimony of a man who has nothing to lose by coming back from prison and helping his friend. It's the testimony of a man who has been convicted ... for the crime, felony, hindering prosecution.

Think about that. Hindering prosecution. Should this convict be believed?

Ladies and Gentlemen, *ask yourselves, how can the defendant explain the theft of the tools on —.*" (Our emphasis)

At this point defendant's counsel objected, out of the hearing of the jury, as follows:

"Your Honor, that's the most direct uncertain [sic] reference of failure—of

the defendant's failure to testify I have ever heard in a closing argument. The defendant doesn't have to explain or testify. He can't make a direct comment upon the defendant explaining anything. Now, that is a—not an implied—direct reference the defendant explained—the defendant doesn't have to explain anything. *I will request a mistrial, Your Honor.*

THE COURT: Be overruled. Do you have any other—

[THE PROSECUTOR]: Your Honor, if it would help, that wasn't the intent. I will explain to the jury the defendant does not have to testify. I will stop any further statements like that.

[DEFENSE COUNSEL]: Just have him stop, Your Honor. I don't want him to explain anything about it.

THE COURT: No, I will overrule the motion for mistrial. I will sustain—do you—you have not objected to—

[DEFENSE COUNSEL]: I object to his referring to—

THE COURT: And I'm sustaining the objection to any further reference of the defendant's failure to testify. Overrule the motion for mistrial." (Our emphasis)

■ The assignment of error we are discussing has not been as comprehensively preserved as the defendant seems to think. At the trial and in his motion for new trial, defendant contended that the prosecutor's comment was a direct reference to the defendant's failure to testify. On appeal, the defendant expanded this contention by arguing that the prosecutor's comment was both a direct and indirect reference to the defendant's failure to testify. Points raised on appeal must be based on the same theory as the objection made during the trial. *State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974); *State v. Kuhrts*, 571 S.W.2d 709, 712 (Mo.App.1978). Consequently the contention that the prosecutor commented indirectly on the defendant's failure to testify has not been properly preserved for review. *State v. Cheek*, 760 S.W.2d 162, 164 (Mo.App.1988).

■ Additionally, with respect to the first point, defendant argues for the first time on appeal that the trial court failed to admonish the jury to disregard the prosecutor's comment. There was no request that the jury be so admonished, and consequently the objection that the trial court refused to do so has not been preserved for review. *State v. Cheatham*, 340 S.W.2d 16, 20[11] (Mo.1960); *State v. Morris*, 585 S.W.2d 231, 234[9] (Mo.App.1979). Technically, our review of the first assignment of error should extend only to determining whether the prosecutor's comment was a direct comment upon the defendant's failure to testify and whether the court erred in refusing to declare a mistrial. Nevertheless, we shall briefly consider the point as it is tendered on appeal.

■ Certainly no person may be compelled to testify against himself in a criminal trial. Mo. Const. art. 1, § 19. Further, if the defendant chooses not to testify, that fact may not be referred to by any attorney in the case. Mo.R.Crim.P. 27.05. Neither direct nor indirect references to a defendant's failure to testify are permitted. *State v. Cheek*, 760 S.W.2d at 165; *State v. Hill*, 678 S.W.2d 848, 850 (Mo.App.1984). Various "tests" have been articulated, but our courts have held that a "direct" comment means a clear and unambiguous reference to the defendant's failure to testify. *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Hutchinson*, 458 S.W.2d 553, 555 (Mo. banc 1970). An "indirect" reference has been said to be a comment which, viewed in context, would cause the jury to infer that the remark referred to the accused's failure to testify. *State v. Hill*, 678 S.W.2d at 850; *State v. Reed*, 583 S.W.2d 531, 534 (Mo.App.1979).

We stand in doubt that the language objected to, the words "how can the defendant explain the theft of the tools on—" can reasonably be considered either as a "direct" or "indirect" reference to the defendant's failure to testify. The situation might be otherwise if the defendant had not attempted to "explain" the presence of the stolen property by calling Mackin as a witness. Inasmuch as the defendant had chosen to "explain," the comment can scarcely be considered an improper sugges-

tion that he was obliged to do so. We consider it likely that when the prosecutor's argument is viewed in context, it amounts to a rhetorical question: How could the defendant explain his possession of the stolen property as he had and expect to be believed?

■ We, of course, did not hear the closing arguments. The trial court did, and it interpreted the comment as a reference, direct or indirect, to the defendant's failure to testify. The specific question before the court is whether the corrective action taken by the court was adequate in the circumstances. We are not impressed with the defendant's argument that the trial court failed to admonish the jury to disregard the prosecutor's comment; contemporaneous objection and proper request for relief are predicates to appellate review of matters arising from the closing argument of counsel, *State v. Hayes*, 624 S.W.2d 16, 19–20[5] (Mo.1981); *State v. Garner*, 760 S.W.2d 893, 901 (Mo.App.1988), and when an objection made to improper argument is sustained and no other relief is sought, the appellant is in no position to complain, having secured all the relief he requested. *State v. Peck*, 429 S.W.2d 247, 251 (Mo. 1968); *State v. Jackson*, 511 S.W.2d 771, 775 (Mo.1974); *State v. Ashley*, 616 S.W.2d 556, 560[9] (Mo.App.1981).

■ The defendant did timely and properly request the declaration of a mistrial. The trial court refused. The declaration of a mistrial is in any case a drastic remedy and should be exercised only in extraordinary circumstances. *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983); *State v. Cheek*, 760 S.W.2d at 165. Declaration of a mistrial rests largely in the discretion of the trial court because the trial court observes the incident which provoked the request for a mistrial and is in a better position than the appellate court to determine what prejudicial effect, if any, the incident had on the jury. *State v. Davis*, 653 S.W.2d at 176; *State v. O'Neal*, 618 S.W.2d 31, 35[2–5] (Mo.1981); *State v. Reynolds*, 608 S.W.2d 422, 427[5, 6] (Mo. 1980). Given the circumstances in which the prosecutor's comment was made and the trial court's superior opportunity to observe its effect on the jury, we cannot say the trial court abused its discretion in denying a mistrial.

The defendant's second point, as presented, is that "the trial court erred in overruling appellant's pre-trial motion to suppress the evidence seized pursuant to a search warrant and in overruling appellant's continuing objection to the introduction of the evidence seized because the supporting affidavit consisted of fourthhand hearsay that stolen property was located at appellant's business without sufficient factual information for same, and without any facts supporting the veracity or reliability of the source of information, such that under the totality of circumstances, the court could not find a substantial basis for probable cause for issuance of the search warrant, all to defendant's prejudice in that said evidence was essential to the state's case."

■ It is necessary to put this assignment in perspective. Essentially, the defendant's complaint is that because the affidavit executed to supplement the application for the warrant recites hearsay, the warrant was issued without probable cause. The assignment of error is not particularized. Counsel assumes that hearsay cannot establish probable cause sufficient to support the issuance of a search warrant. Such is, of course, a mistaken assumption. Hearsay may be sufficient to establish probable cause if there is a substantial basis for crediting the hearsay. *State v. Bradley*, 485 S.W.2d 408, 411 (Mo. 1972); *State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App.1982); *State v. Phillips*, 532 S.W.2d 533, 535 (Mo.App.1976). It is sufficient that the information relied on to establish probable cause be corroborated through other sources of information so as to provide a substantial basis for crediting the hearsay and reduce the chances of reliance on a reckless or prevaricating tale. *Illinois v. Gates*, 462 U.S. 213, 244–45, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527 (1982), citing *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735–36, 4 L.Ed.2d 697 (1960). The two-pronged test developed in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584,

21 L.Ed.2d 637 (1969), has been abandoned. *State v. Horsey,* 676 S.W.2d 847, 852 (Mo. App.1984). As stated in *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332:

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, *there is a fair probability that contraband or evidence of a crime will be found in a particular place.* And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed...." (Our emphasis)

The affidavit before us, received as State's exhibit 7, was used to obtain two search warrants, one to search the property occupied by the defendant. The affidavit was executed by Steve Ijames, a Springfield city police officer. The affidavit, summarized, states that on April 4, 1984, one Donald Shannon Osborn was taken in custody "on probable cause" for receiving stolen property. Osborn advised police officers that he had seen property described as:

"One large and one small red Snap–On tool chest, both containing a large quantity of Snap–On tools. Both chests and tools [were] engraved with the initials MTC."

at a location known as the Battery Shop just outside the Springfield city limits on West Sunshine Street. Osborn had been told by Lloyd Allen Mackin that the property just described (and other property) was stolen and he, Osborn, was to transport it to a residence owned by one Danny Dykes. Osborn did so, and was told that thereafter, the stolen property had been transported to the defendant's residence. Officer Ijames contacted Mr. Ernhart, Motor Transportation Company's representative, and Ernhart stated that the property described "matche[d] the description of [items]" stolen from Motor Transportation Company.

■ The affidavit, part of which we have summarized, is neither concise nor explicit. Nevertheless we believe it is sufficient to establish a fair probability that contraband or evidence of a crime would be found at a particular place. Of course, the objection made is that the affidavit would not support a probable-cause determination because the affidavit was based on hearsay. As we have said, hearsay may establish probable cause if there is a substantial basis for crediting the hearsay. In this particular case, the informant admitted the act of transporting stolen property from one location to the location where it was found. Such an admission against interest lent credibility to the informant's tip. *United States v. Harris,* 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971). There was also "corroboration through other sources" tending to provide credibility to the hearsay because Officer Ijames' inquiry confirmed that the property described by Osborn was property stolen from MTC. *See Jones v. United States,* 362 U.S. 257, 270, 271, 80 S.Ct. 725, 735–36.

The State has suggested that the "good faith" exception to the exclusionary rule developed in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), validates the search and seizure even if Officer Ijames' affidavit was not sufficient to validate a probable-cause determination. Perhaps so, but we decline to base our decision on that ground. The defendant's trial objection was that the search warrant by virtue of which the evidence of his crime was seized was defective because the warrant was issued without probable cause. The only question raised at the trial was whether hearsay can warrant a probable-cause determination. We believe it can, and in this instance did support such a determination. If the search warrant is deficient in some other respect, that deficiency has not been developed in this court. We find no error in any respect briefed in this court. Accordingly, the judgment is affirmed.

FLANIGAN, P.J., and MAUS and PREWITT, JJ., concur.